UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNET SPECIALTIES WEST, INC., a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ISPWEST, a California company, MILON-DIGIORGIO ENTERPRISES, INC., a California Corporation, ACEWEB INTERNET, a California Company, and DOES 1 through 10<br><br>Defendants. | CV 05-3296 FMC (AJWx)<br><br>**COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: EQUITABLE REMEDY AND EQUITABLE DEFENSE OF LACHES** |

This matter came before the Court, sitting with a jury, for an eight-day trial commencing on October 10, 2006, the Honorable Florence-Marie Cooper, United States District Judge, presiding. On October 20, 2006, the jury returned a verdict in favor of the Plaintiff on its claims for (1) False Designation of Origin (15 U.S.C. § 1125(a)); (2) Statutory Unfair Competition (Cal Bus. & Prof. Code §



¹THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

17200 et seq.); (3) Common Law Unfair Competition; and (4) Common Law Passing Off. The jury did not award Plaintiff any monetary damages, leaving Plaintiff with the possibility of an equitable, injunctive remedy only. The Court conducted a separate trial, without a jury, on Defendant's equitable defense of laches. Upon consideration of the testimony and evidence received, the Court's evaluation of the demeanor and credibility of the witnesses, and the written briefs submitted by the Parties, the Court sets forth the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## I. Nature of the Defense

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quotations omitted). It is a valid defense to trademark infringement actions under the Lanham Act. *See id.; cf. GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir. 2000) ("[W]e have certainly allowed laches to bar trademark infringement cases in the past, but 'we have done so only where the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time.'") (quoting *Brookfield Communs., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1061 (9th Cir. 1999)).

### A. Presumptions Regarding Applicability

"In [analyzing] a laches claim where an injunction is sought, courts first determine when the statute of limitations period expired for 'the most closely analogous action under state law.'" *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, __ F.3d __, 2006 U.S. App. LEXIS 25359 *10 (9th Cir. Oct. 11, 2006) (quoting *Jarrow Formulas*, 304 F.3d at 836). If the plaintiff filed outside of that period, there is a strong presumption that laches applies. *Id., see*

1. *also Jarrow Formulas,* 304 F.3d at 837 ("[T]he presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period."). The converse is also true. *See Jarrow Formulas,* 304 F.3d at 836 ("If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable.").

### 1. Applicable Limitations Period in This Case

Plaintiff maintains that the most closely analogous state-law limitations period for its claims under the Lanham Act are the four-year periods for state trademark infringement and unfair competition claims, set forth under Cal. Code Civ. Proc. § 343 and Cal. Bus. & Prof. Code § 17208. *See Miller v. Glenn Miller Prods.,* 318 F. Supp. 2d 923, 942 n.11 (C.D. Cal. 2004) ("The California statute of limitations for breach of contract claims, statutory right of publicity claims, state trademark infringement and/or dilution claims, and state unfair competition claims is four years.") (citing Cal. Code Civ. Proc. §§ 337, 343). The Court agrees. Although, as Defendant points out, the Ninth Circuit in *Jarrow Formulas, supra,* applied the three-year period for "fraud" under Cal. Code Civ. Proc. § 338(d), that case involved claims for false and deceptive advertising under 15 U.S.C. § 1125 (a)(1)(B), not trademark infringement.

### 2. Commencement of the Limitations Period

"The limitations period for laches starts 'from the time the plaintiff knew or should have known about its potential cause of action.'" *Tillamook,* 2006 U.S. App. LEXIS 25359 at *9 (quoting *Jarrow Formulas,* 304 F.3d at 838.). Accordingly, the limitations period in this case should commence from the time that Plaintiff knew or should have known about likely consumer confusion between itself and Defendant. *See id.* at *12 ("The undisputed record demonstrates that [plaintiff] knew or should have known of possible customer

3

confusion shortly after [defendant's] origination in 1976."); *see also* 5 McCarthy on Trademarks and Unfair Competition (hereinafter "McCarthy") § 31.39 (2006) ("Because a trademark owner cannot properly file suit based only on rumor and speculation, the period of delay should be measured only from the date when the potential plaintiff receives or should have gathered reliable information establishing the basis for a claim.") (internal quotations omitted).

Here, the evidence reflects that the earliest that Plaintiff, ISWest, received notice of the existence of Defendant, ISPWest, was late 1998 or early 1999, when Defendant began operating its website, www.ispwest.com. However, at that time, Defendant was still a small, slow-growing internet service provider and just one of a great many such companies. (Both Defendant and Plaintiff's experts described the late 1990s as encompassing a "tech bubble" in which there were numerous, local internet services providers). Moreover, there was no indication (on its website or otherwise) that Defendant was planning to expand its services to include DSL or T-1 in the near future, thus bringing it into direct competition with Plaintiff. Accordingly, the Court concludes that the limitations period for laches could not have commenced in late 1998 or early 1999, as Plaintiff could not have gathered a "reliable basis for a claim" under the Lanham Act at that time.

Instead, the Court finds that the proper time for the commencement of the limitations period is mid-2004, when Defendant began offering DSL services, bringing it into more direct competition with Plaintiff. Because Plaintiff filed this action in May of 2005, it was well within the analogous four-year limitations period. Accordingly, there is a strong presumption against the applicability of laches.

**B.     Whether Plaintiff's Delay in Filing Was Reasonable**

Even assuming arguendo that the limitations period began to run at the earlier date(s) suggested by Defendant, the Court concludes that laches is inapplicable because Plaintiff's delay in filing was reasonable in light of the six non-exclusive factors espoused by the Ninth Circuit Court of Appeals in its opinion in *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983). *See e.g., Tillamook*, 2006 U.S. App. LEXIS 25359 at *10-11 (after determining expiration of the analogous statute of limitations, district court must consider six *E-Systems* factors "to determine whether the trademark owner's delay in filing suit was unreasonable . . . ."); *see also Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1102 (9th Cir. 2004) (same). These factors are: (1) the strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing mark; (3) harm to senior user if relief is denied; (4) good faith ignorance by junior user; (5) competition between senior and junior users; and (6) extent of harm suffered by the junior user because of senior user's delay.

**1.     Strength and Value of the Trademark Rights Asserted**

The initial strength of a mark is determined by its placement on the continuum of marks—i.e., generic, descriptive, suggestive, arbitrary and fanciful. *See, e.g., M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005) ("The more distinctive a mark, the greater its conceptual strength; in other words, a mark's conceptual strength is proportional to the mark's distinctiveness."). Nevertheless, "[a] mark's overall strength is relative and cannot be determined by mechanistically assessing its conceptual or commercial strengths." *Id.* at 1081. "A suggestive or descriptive mark, which is conceptually weak, can have its overall strength as a mark bolstered by its commercial success." *Id.* (internal citations omitted).

5

Here, in reaching its verdict in favor of Plaintiff, the jury found that Plaintiff's mark is either inherently distinctive or a descriptive mark with secondary meaning. As the Court is bound by the jury's findings of fact, this factor clearly favors Plaintiff. *See, e.g., Los Angeles Police Protective League v. Gates,* 995 F.2d 1469, 1473 (9th Cir. 1993) ("[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are 'based on the same facts,' in deciding the equitable claims 'the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'") (quoting *Miller v. Fairchild Indus.,* 885 F.2d 498, 507 (9th Cir. 1989), *cert. denied,* 494 U.S. 1056 (1990)).

### 2. Plaintiff's Diligence in Enforcing the Mark

The evidence establishes that Plaintiff learned of Defendant's use of the "ISPWest" mark in late 1998 at the earliest. However, as set forth above, the competition between the parties did not coalesce until several years later (between 2002-2004), as Defendant gradually expanded its marketing efforts and, concomitantly, began offering additional services to the consuming public (e.g., DSL).

The Ninth Circuit has long recognized that "laches cannot bar injunctive relief when an infringing user progressively encroaches on the owner's mark over time." *Grupo Gigante,* 391 F.3d at 1103 (citation omitted). Rather, the doctrine of "progressive encroachment" allows a plaintiff to delay its enforcement efforts until such time as "'the junior user of the mark moves into direct competition . . . selling the same "product" through the same channels and causing actual market confusion.'" *Tillamook,* 2006 U.S. App. LEXIS 25359 at *15 (quoting *Prudential Ins. Co. of America. v. Gibraltar Fin. Corp. of California,* 694 F.2d 1150, 1154 (9th Cir. 1982)); *see also* McCarthy, § 31.19 ("A period of low-

6

profile sales by a fledgling business should not be counted toward laches. The trademark owner is justified in delaying the unleashing of litigation until it is seen if the infringing business or product line will survive, let alone significantly impact on plaintiff's trademark rights.").

Contrary to Defendant's arguments, this case is a veritable exemplar of "progressive encroachment." At the time Plaintiff first learned of Defendant's existence, Defendant was a nascent ISP with limited potential for success, given the high failure rate of similar businesses. In addition, as both parties' experts attested, Defendant's moving from "dial-up" to DSL and other more sophisticated services was part of a natural and gradual technological evolution. Finally, because Defendant did not offer DSL services at the time Plaintiff learned of its existence, it was reasonable for Plaintiff to conclude that Defendant would be unsuccessful in staying in business and, thus, did not constitute a direct "threat" to Plaintiff.

For all of these reasons, this case is distinguishable from both *Tillamook* and *Grupo Gigante, supra*. In each of those cases, the defendants did not substantially expand their product lines and/or their target markets during the laches period. *See, e.g., Tillamook,* 2006 U.S. App. LEXIS 25359 at *17 (Noting that had defendant 'expanded its business' into selling a different *product* in grocery stores, "it would be a different story."); *Grupo Gigante,* 391 F.3d at 1103 ("The [defendants'] use of the mark has not changed since 1996: they operate two grocery stores in San Diego."). Accordingly, it is wholly appropriate for this Court to conclude that Plaintiff ISWest, unlike the plaintiffs in *Tillamook* and *Grupo Gigante,* was sufficiently "diligent" in enforcing its rights.

### 3.  Harm to Senior User if Relief Granted

In rendering its verdict, the jury found that Defendant used the mark

"ISPWest" in a manner "that is likely to cause confusion among ordinary purchasers as to the source of the goods." In the Ninth Circuit, there is a presumption of "irreparable harm" upon a showing of "likelihood of confusion." *See, e.g., Metro Publ', Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."). Accordingly, this factor also favors Plaintiff.

### 4. Good Faith Ignorance by the Junior User

This factor appears to favor Defendant, as there is no evidence in the record that Defendant had prior knowledge of Plaintiff when it decided to adopt the name "ISPWest." Rather, the evidence reflects that Defendant's principals selected the name independently, to signify the nature of their services and the geographical locality in which they are provided. At the same time, this is not a case in which the senior user took measures consistent with formal "acquiescence" to the junior user's conduct. *Compare, e.g., Tillamook,* 2006 U.S. App. LEXIS 25359 at *17-18 (senior user sold junior user's products in its factory store "for years without objecting to the use of the mark.").

### 5. Competition between senior and junior users

It is clear that Plaintiff ISWest and Defendant ISPWest offer goods and services in direct competition with one other. Both companies offer internet connectivity services for business and residential customers, including dial-up, DSL, web hosting, web site design and domain services, both within and outside of Southern California. Accordingly, this factor favors Plaintiff as well.

### 6. Extent of Harm Suffered by the Junior User Due to Delay

"[P]rejudice to the defendant is an essential element of any laches defense." *Grupo Gigante*, 391 F.3d at 1105. Prejudice may be found if the defendant "has continued to build a valuable business around its trademark during the time that

the plaintiff delayed the exercise of its legal rights." *Id.* However, this inquiry involves more than a cursory confirmation that the defendant continued to operate its business during the laches period; there must be a discernable lost "expectation." *See, e.g.,* McCarthy § 31:12 ("Expectation prejudice encompasses actions by the defendant or actions that it would not have taken or consequences it would not have suffered had the plaintiff brought suit promptly.").

Here, Defendant claims that it will be prejudiced because it will have to change its name, thereby forfeiting the "brand" recognition it has achieved through its extensive advertising efforts. However, the evidence reflects that the vast majority (at least 70 percent) of Defendant's advertising took the form of internet "pay per click" advertisements, through which potential customers are funneled to Defendant's website based on their interest in a particular type of service (i.e., internet services in Southern California). As Plaintiff's expert testified, such advertising therefore creates little to no "brand" awareness.

In addition, it is impossible for the Court to conclude that Defendant's advertising expenditures would have been reduced had Plaintiff elected to sue several years earlier. Had Defendant undertaken to change its name at that time, it would still have incurred the same fixed advertising costs by engaging in pay-per-click advertising (e.g., at $2 per click) under the "new" name.

Finally, it is not clear that Defendant will have to undertake significant advertising efforts to effectively change its name at this juncture. The evidence reflects that Defendant has successfully changed its name in the past (from "AceWeb" to ISPWest) and that internet service providers frequently change their names due to consolidation and mergers. Additional costs, such as changing stationary, logos, and phone system programming, and registering a new domain name, are minimal. *Compare, e.g., McDonald's Corp. v. Druck & Gerner*, P.C.,

814 F. Supp. 1127, 1138 (D.N.Y. 1993) (noting that expenses associated with defendant's changing its name on its signage and stationery, among other things, were minimal). In any event, these are costs which would have been incurred regardless of when suit was filed.

Based on the foregoing, the Court concludes that the potential prejudice to Defendant if laches is not applied is minor. Accordingly, and in light of the fact that all the balance of the other *E-Systems* factors strongly favor Plaintiff, the Court concludes that the equitable defense of laches does not bar Plaintiff's claims for injunctive relief under the Lanham Act.

## II. Unclean Hands as a Bar to Laches

Plaintiff maintains that Defendant cannot avail itself of a laches defense because Defendant has "unclean hands." *See, e.g., Jarrow Formulas,* 304 F.3d at 841 ("A party with unclean hands may not assert laches.") (citations omitted). However, because the Court concludes that laches is inapplicable due to the fact that Plaintiff was reasonable in its choice not to file this lawsuit until May 2005, it need not address this issue.

## CONCLUSION

Based on the foregoing, the Court finds that Plaintiff is entitled to injunctive relief.

November 14, 2006

*Florence Marie Cooper*

FLORENCE-MARIE COOPER
U.S. DISTRICT JUDGE

10